[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-16375
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 22, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-80198-CV-WJZ

CASSIUS WALKER,

Plaintiff-Appellee,

versus

CITY OF RIVIERA BEACH,
a municipal corporation,

Defendant,

KEITH PATTERSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(December 22, 2006)**

Before EDMONDSON, Chief Judge, BARKETT and COX, Circuit Judges.

PER CURIAM:

Plaintiff-Appellee Cassius Walker ("Walker") filed suit against Defendants-Appellants City of Riviera Beach ("City") and police officer Kenneth Patterson ("Officer Patterson"), alleging, <u>inter alia</u>, that Officer Patterson used excessive force against him in violation of Walker's Fourth Amendment rights. Officer Patterson appeals the district court's denial of his motion for summary judgment on the ground that he has qualified immunity from suit. We affirm.

## I. BACKGROUND

According to Walker, these are the facts.

On 8 December 2002, Walker was driving his vehicle home with a friend, Juan Cabrera, who sat in the front passenger seat. Officer Patterson was sitting at an intersection in his unmarked police car, and he observed Walker's vehicle going through the intersection. Officer Patterson pulled behind Walker and turned on his blue flashing lights to pull over Walker.[1] When Walker did not immediately pull over, Officer Patterson pulled up alongside Walker's vehicle

---

[1] Officer Patterson testified that Walker's vehicle was speeding and that Walker had run a red light. Walker alleges he was not speeding at the time. But the initial traffic violations are irrelevant because probable cause was established when Walker did not stop, which is a third-degree felony in Florida. FLA. STAT. § 316.1935.

2

with his gun drawn. At that point, both vehicles' windows were down, and Officer Patterson shouted at Walker to pull over or Patterson would shoot Walker. Walker did not stop his vehicle but continued onward, driving another four or five blocks. Walker eventually slowed, turned into a parking lot, and stopped with Officer Patterson behind him.

Officer Patterson exited his vehicle with his gun still drawn and shouted profanities at Walker as he approached the driver's window. Patterson then "slammed" his gun against Walker's forehead, dragged him out of his vehicle, kneed him in the side, and kneeled on him. The gun-slap caused a half-inch laceration to Walker's head that was later closed with six stitches. No other injuries were reported, but Walker claims his face and eyes were swollen and that his back was sore.

Walker sued the City and Officer Patterson under section 1983 of Title 42, alleging excessive force in violation of the Fourth Amendment.[2] Officer Patterson moved for summary judgment, in part contending he was entitled to qualified immunity. The district court denied the motion, and Officer Patterson appeals the judgment on the issue of qualified immunity.

---

[2]Walker also brought common law tort claims against the defendants.

## II. STANDARD OF REVIEW

We review <u>de novo</u> a district court's denial of qualified immunity on summary judgment. <u>Gold v. City of Miami</u>, 121 F.3d 1442, 1444-45 & n.3 (11th Cir. 1997). We first resolve all issues of material fact in favor of the plaintiff, and we then answer the legal question of whether the defendant is entitled to qualified immunity under that version of the facts. <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1190 (11th Cir. 2002).

## III. DISCUSSION

To be eligible for qualified immunity, a government official first must show that he was performing a discretionary function at the time the alleged violation of federal law occurred. <u>Crosby v. Monroe County</u>, 394 F.3d 1328, 1332 (11th Cir. 2004). Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity by showing these things: "(1) that the defendant has

4

committed a constitutional violation and (2) that the constitutional right the defendant violated was 'clearly established' at the time he did it." Id.

The district court ruled that summary judgment could not be granted in favor of Officer Patterson on the basis of qualified immunity because "genuine issues of material fact" existed as to whether Officer Patterson's conduct was unconstitutional. This application of the summary judgment standard was mistaken because -- in resolving qualified immunity issues -- a "material issue of fact" never exists. "When conducting a qualified immunity analysis, district courts must take the facts in the light most favorable to the party asserting the injury." Robinson v. Arrugueta, 415 F.3d 1252, 1257 (11th Cir. 2005). Consideration of the record in this light eliminates all issues of fact. Id. Although the district court's opinion contains errors, we nevertheless affirm the district court's decision to deny qualified immunity to Officer Patterson.

Walker does not dispute that Officer Patterson was acting within the scope of his discretionary authority. Patterson was driving to work at the police station at the time of the incident, and he was fulfilling his duties as a police officer. And we conclude that Walker's version of the facts -- which we must accept to determine whether Officer Patterson is entitled to qualified immunity and

summary judgment -- shows that Officer Patterson violated Walker's clearly established Fourth Amendment rights.

"The use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment." Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002). To establish such a Fourth Amendment violation, Walker must show (1) that a seizure occurred and (2) that the force used to carry out the seizure was unreasonable. Harris v. Coweta County, 433 F.3d 807, 812-13 (11th Cir. 2005). We make the reasonableness inquiry from the perspective of a reasonable officer: the question then is whether Officer Patterson's conduct is objectively reasonable, in the light of the facts and circumstances confronting him,[3] without regard to his intent or motivation. Id. at 813 n.6. We think Walker's version of the facts demonstrate that Officer Patterson seized Walker and applied unreasonable force in carrying out the seizure.

Officer Patterson seized Walker when Walker pulled over and stopped in the parking lot. "A seizure under the Fourth Amendment occurs when the officer, by means of physical force or show of authority, has in some way restrained the

---

[3]We devote "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 109 S.Ct. 1865, 1872 (1989).

liberty of a citizen." United States v. Franklin, 323 F.3d 1298, 1301 (11th Cir. 2003) (internal quotation and citation omitted). Officer Patterson first showed his authority when he pulled behind Walker's vehicle and flashed his lights. Officer Patterson then pulled alongside Walker's vehicle, drew his gun, and shouted instructions for Walker to pull over. Walker yielded to Officer Patterson's show of authority when he stopped his vehicle in the parking lot. At that point, Walker was seized.[4]

Assuming Walker's allegations are true, we accept that Officer Patterson applied unreasonable force when he hit Walker in the head with the gun.[5] By the time Walker had pulled over and Officer Patterson approached the car with gun drawn, no threat or risk existed that would have justified Officer Patterson hitting Walker in the head with a gun. Officer Patterson's conduct was an unnecessary

---

[4]We think no seizure occurred until Walker stopped. Officer Patterson did not effectuate a seizure when he pulled alongside Walker's vehicle with a gun drawn because Walker did not yield; Walker continued onward for another four or five blocks. See Troupe v. Sarasota County, 419 F.3d 1160, 1167 (11th Cir. 2005) (noting that an attempt to seize the driver of a moving car by firing a gun at the car's tires is not a seizure because "neither usage nor common-law tradition makes an attempted seizure a seizure").

[5]We express no view today on whether Officer Patterson's later acts as alleged by Walker (pulling Walker out of the car, kneeing him in the side, and kneeling on his back to subdue him) are necessarily -- by themselves -- constitutionally unreasonable or, if unreasonable, would be sufficient to defeat qualified immunity. For background, see Nolin v. Isbell, 207 F.3d 1253, 1255, 1258 (11th Cir. 2000); Jones v. City of Dothan, 121 F.3d 1456, 1458 (11th Cir. 1997). But striking Walker's head with the gun makes what happened during the seizure here clearly unconstitutional, given the supposed facts.

7

and unreasonable use of force against Walker. See Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir. 2004) ("[I]n determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted.").

Taking the evidence in the light most favorable to Walker, we conclude that Officer Patterson unreasonably struck Walker's head with a gun. Such excessive force is a violation of the Fourth Amendment. We also conclude that the violation was clearly established at the time.

A plaintiff can show the law clearly established the officer's use of force was excessive in two ways: (1) "a controlling and materially similar case declares the official's conduct unconstitutional;"[6] or (2) "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000) (internal quotation and citation omitted).

---

[6]A plaintiff can fulfill the first method by showing that "preexisting case law is sufficiently similar in facts to the facts confronting an officer, such that we can say every objectively reasonable officer would have been on 'fair notice' that the behavior violated a constitutional right." Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

We have no " controlling and materially similar case" declaring Officer Patterson's strike to Walker's head with the gun unconstitutional. But we accept that Officer Patterson's supposed conduct is obviously unconstitutional, notwithstanding the lack of precedent. Officer Patterson first pursued Walker for speeding, and Walker did not immediately pull over when Officer Patterson flashed his lights and shouted for Walker to yield. Walker eventually pulled into a parking lot, and Officer Patterson approached the vehicle on foot with gun drawn. Walker turned off the car and did not resist arrest or attempt to flee again. Nevertheless, Officer Patterson unnecessarily "slammed" his pistol into Walker's head. Viewing the evidence in the light most favorable to Walker, "no particularized preexisting case law was necessary for it to be clearly established that what [Officer Patterson] did violated [Walker's] constitutional right to be free from the excessive use of force." See id. at 927. Such an unwarranted pistol whip lies at the core of what the Fourth Amendment prohibits.

IV. CONCLUSION

9

On this record, we conclude that Officer Patterson is not entitled to summary judgment on the basis of qualified immunity. Therefore, the district court's decision is,

AFFIRMED.