[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-14454

_____

KENNETH BAILEY,

                                        Plaintiff-Appellant,

*versus*

SHAWN T. SWINDELL,
In his individual capacity,

                                        Defendant-Appellee,

MICHAEL RAMIREZ, et al.,

                                        Defendants.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:15-cv-00390-MCR-HTC

_____

Before LAGOA and BRASHER, Circuit Judges, and BOULEE,* District Judge.

LAGOA, Circuit Judge:

This Section 1983 case is before us for a second time. *See Bailey v. Swindell*, 940 F.3d 1295 (11th Cir. 2019) ("*Bailey I*"). After being arrested at his parents' home, Kenneth Bailey filed suit against the arresting officer, alleging that Deputy Shawn Swindell violated his civil rights when Swindell tackled him through the door of the house and then arrested him. In *Bailey I*, the district court granted summary judgment in favor of Swindell on qualified immunity grounds. We reversed the district court and held that when the evidence was viewed in the light most favorable to Bailey, the non-moving party, Swindell violated clearly established law when he entered Bailey's parents' home to arrest him without a warrant or exigent circumstances. *See id.* at 1298. And we concluded that Swindell was not entitled to qualified immunity for his violation of Bailey's Fourth Amendment rights. *Id.* at 1303–04.

_____

*Honorable J. P. Boulee, United States District Judge for the Northern District of Georgia, sitting by designation.

Following remand, the case went to trial.[1]  The jury returned a verdict for Bailey and awarded Bailey $625,000 for his injuries.  In a post-trial motion, Swindell moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b).  The district court granted Swindell's motion for judgment as a matter of law and set aside the jury's verdict.

Bailey appeals the district court's order granting judgment as a matter of law for Swindell on his false arrest claim under 42 U.S.C. § 1983.  On appeal, Bailey argues that: (1) the district court erred by granting Swindell qualified immunity after the jury found that the hot pursuit exigency did not apply to his warrantless arrest, and (2) the district court erred in considering exigent circumstances when it was not one of the grounds for Swindell's earlier motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a).

After careful review, and with the benefit of oral argument, we reverse the district court's grant of judgment as a matter of law

---

[1] To be clear, this was the second trial in this case.  Before *Bailey I*, the district court granted summary judgment in favor of Swindell as to Bailey's false arrest claim.  The case then went to trial only on the issue of excessive force, which had not been resolved on summary judgment.  Following trial, Bailey appealed the earlier grant of summary judgment on the false arrest claim but not the verdict on the excessive force claim.  After we issued *Bailey I* and remanded the case to the district court, the parties proceeded to a second trial on questions of probable cause and exigent circumstances to justify warrantless entry into Bailey's home.

for Swindell on Bailey's unlawful arrest claim and reinstate the jury's verdict in favor of Bailey.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

In September 2014, Bailey and his wife, Sherri Rolinger, were going through a divorce. On the night of September 11, 2014, Deputy Shawn Swindell received a call from Deputy Andrew Magdalany, who had responded to a call at Bailey's former marital home following a verbal altercation between Rolinger and Bailey. Magdalany relayed Rolinger's complaints that Bailey was harassing her, including coming to the home unannounced, turning photographs face down, leaving cigarette butts, and even installing cameras in the home without Rolinger's knowledge. Magdalany also explained that Rolinger stated that Bailey was not "acting right" and "had snapped." At the time of the call, Magdalany had not yet determined whether Bailey had committed any crime. Swindell headed to Bailey's parents' residence, where he was living at the time, to investigate.

Bailey voluntarily came out of his parents' home onto the front porch to talk with Swindell. Although Bailey repeatedly asked Swindell why he was there, Swindell never explained what he was investigating, but rather insisted that they go to his patrol car to talk. At some point, Bailey said "Okay, if you're not going

---

[2] Because this case arises on the appeal of the district court's judgment as a matter of law for Swindell, we take and construe the facts in the light most favorable to Bailey. *See Bishop v. City of Birmingham Police Dep't*, 361 F.3d 607, 609 (11th Cir. 2004).

to tell me why you're here, I'm going to turn around and go inside." Bailey crossed the threshold of the door and went inside the house. At trial, Bailey and his family testified that Swindell then ran toward Bailey and tackled him through the doorway of the house while exclaiming, "I am going to tase you." At trial, Swindell testified to a different version of events, stating that he put his arm on Bailey's shoulder and told him he was not free to leave because he could be arrested on charges of domestic violence, all before Bailey entered the house. Swindell also testified that Bailey struck Swindell with his arm while they were still on the front porch.

Once inside the house, Swindell and Bailey ended up on the floor. After a physical conflict, more deputies arrived on scene, arrested Bailey, and took him to the Santa Rosa County jail. As a result of the arrest, Bailey suffered injuries, including herniated disks in his neck.

The second trial focused on the moments before Bailey's arrest. On the third day of trial, the jury was instructed on the law of exigent circumstances. The district court explained that "[e]xigent circumstances justify a law enforcement officer's warrantless entry into a home without an occupant's consent where either the arrest was set in motion in an area that is open to public view, which includes a front porch, and the person flees into a home, and the officer immediately follows the fleeing suspect into the home from the scene of the crime." At the conclusion of the trial, the jury was given a verdict form that combined general questions and special

interrogatories.[3]  Because the verdict form included a question on where the arrest was "initiated," Swindell's counsel requested a definition for "initiate" from the district court.  The district court denied the request, reasoning that there is no legal definition of the word and that the word "initiate" is a "commonly understood term."

Before deliberations, the district court instructed the jury that they "are the judges of the facts in this case."  The first question on the verdict form asked, "Did Deputy Shawn T. Swindell have reasonable suspicion to detain Mr. Kenneth Bailey for a law enforcement investigation?"  The jury answered yes.  The verdict form next asked, "Did Deputy Swindell have probable cause to arrest Mr. Bailey?"  The jury answered yes, which prompted them to indicate which of the following supported their finding of probable cause: (1) "Willfully, maliciously, and repeatedly following, harassing, or cyberstalking another person;" (2) "Knowingly resisting, obstructing, or opposing a law enforcement officer who was engaged in the lawful execution of a legal duty;" (3) "Knowingly and willfully resisting, obstructing, or opposing a law enforcement officer who was engaged in the lawful execution of a legal duty by offering to violence or doing violence to the officer;" and/or (4) "Battery on a law enforcement officer."  Given the choice to select multiple options, the jury checked only the second: "Knowingly resisting,

---

[3] *See* Appendix.

obstructing, or opposing a law enforcement officer who was engaged in the lawful execution of a legal duty."

The next question asked, "Where was the arrest _initiated_?" with choices: (1) "Outside the home" or (2) "Inside the home." The jury chose "Outside the home." The verdict form next asked, "If you determined that the arrest was _initiated outside_ the home, did exigent circumstances justify Deputy Swindell's warrantless entry into the home?" The jury answered no. Because the jury found that exigent circumstances did not justify the warrantless entry into the home, they were prompted to skip the next question identifying which of the following exigent circumstances justified the entry: (1) "Hot pursuit of a fleeing suspect into the home;" (2) "Urgent need to enter the home to prevent the imminent destruction of evidence;" (3) "Specific and articulable facts supported a belief that the suspect was armed and immediate entry into the home was necessary for safety."

Because the jury found that no exigent circumstances justified Swindell's warrantless entry into the home, they proceeded to answer the next question: "Did Deputy Shawn T. Swindell's conduct cause Kenneth Bailey's injuries?" and "Do you find that Kenneth Bailey should be awarded compensatory damages?" The jury answered that Swindell did cause the injuries and that Bailey should be awarded damages in the form of $625,000.00. There were no objections to the jury's verdict.

After the clerk read the verdict, Swindell asked for a ruling on a previously raised motion for judgment as a matter of law. The

district court denied it as moot but advised that the parties could file post-trial motions. A judgment in accordance with the jury's verdict was entered on June 7, 2021.

Swindell filed a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), arguing that the jury's finding that Swindell initiated the arrest of Bailey outside the home compelled entry of judgment in Swindell's favor on qualified immunity grounds. Because the jury found that the arrest was initiated outside the house, Swindell argued it was "inexplicabl[e]" for the jury to also conclude that there were not exigent circumstances. Bailey opposed the motion, arguing that the jury had expressly rejected exigency. Given the jury's finding that Swindell's actions violated a constitutional right, Bailey contended that the only question remaining was whether that right was clearly established.

On this question, the district court reasoned that it must decide whether the law on the date of the incident gave Swindell clear notice that his conduct was unconstitutional for purposes of qualified immunity. And because "[t]he contours of the hot pursuit doctrine in the context of fleeing misdemeanants was an open legal question at that time," the district court determined that the law was not clearly established and granted Swindell's motion. The district court vacated the jury's judgment in favor of Bailey and entered judgment as a matter of law in favor of Swindell. This appeal followed.

## II.     STANDARD OF REVIEW

We review a district court's granting of a motion for judgment as a matter of law de novo, considering only the evidence that may properly be considered and the reasonable inferences drawn from it in the light most favorable to the nonmoving party. *Rossbach v. City of Miami*, 371 F.3d 1354, 1356 (11th Cir. 2004). Judgment as a matter of law is appropriate when a court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for [a] party on [an] issue." Fed. R. Civ. P. 50(a)(1). "We will not second-guess the jury or substitute our judgment for its judgment if its verdict is supported by sufficient evidence." *EEOC v. Exel, Inc.*, 884 F.3d 1326, 1329 (11th Cir. 2018) (quoting *Lambert v. Fulton Cnty.*, 253 F.3d 588 594 (11th Cir. 2001)). "In determining whether a government official is entitled to qualified immunity following a jury verdict, we view the evidence in the light most favorable to the party that prevailed at trial." *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1290 (11th Cir. 2000) (citing *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)). "In so doing, we give deference to the jury's 'discernible resolution of disputed factual issues.'" *Id*. (quoting *Iacobucci v. Boulter*, 193 F.3d 14, 23 (1st. Cir. 1999)).

## III.     ANALYSIS

Although qualified immunity presents a question of law, "resolution of this question can sometimes turn on issues of fact." *Simmons v. Bradshaw*, 879 F.3d 1157, 1163 (11th Cir. 2018). When it is not evident from the allegations of the complaint alone that the

defendants are entitled to qualified immunity, the case will proceed to the summary judgment stage. *Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002). "Even at the summary judgment stage, not all defendants entitled to the protection of the qualified immunity defense will get it." *Id.* As relevant here, "if the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it will proceed to trial." *Id.* A defendant in those circumstances is, however, "not foreclosed from asserting a qualified immunity defense at trial." *Vaughan v. Cox*, 343 F.3d 1323, 1333 (11th Cir. 2003). At trial, the jury itself decides issues of fact that are determinative of the qualified immunity defense but does not apply the law of qualified immunity to those facts. *Breeden*, 280 F.3d at 1318.

In *Bailey I*, this Court, accepting Bailey's version of events as true, reversed the grant of summary judgment in favor of Swindell because Swindell arrested Bailey without a warrant, consent, or exigent circumstances. 940 F.3d at 1300. The case went to trial, where the jury resolved the factual disputes surrounding Bailey's arrest and determined that the arrest was initiated outside the home but that no exigent circumstances existed allowing for a warrantless entry into the home. It is these factual findings made expressly by the jury that the district court should have used in reaching its conclusions of law about qualified immunity. *See Simmons*, 879 F.3d at 1164 ("[T]he question of what circumstances existed at the time of the encounter is a question of fact for the jury—but the question

of whether the officer's perceptions and attendant actions were objectively reasonable under those circumstances is a question of law for the court.").

When reviewing a district court's decision on qualified immunity following a jury verdict, we give deference to the jury's discernable resolution of disputed factual issues. *Oladeinde*, 230 F.3d at 1290. Here, the jury was asked to determine whether exigent circumstances existed to allow Swindell to enter the home without violating Bailey's constitutional rights. Particularly, the jury was instructed that exigent circumstances exist where "the arrest was set in motion in an area that is open to public view, which includes a front porch, and the person flees into a home, and the officer immediately follows the fleeing suspect into the home from the scene of the crime." The jury expressly found that exigent circumstances did not justify Swindell's warrantless entry into the home. Despite the jury's clear rejection of exigent circumstances, Swindell insists such a conclusion is impossible because the arrest began outside and ended inside--facts which, Swindell seems to believe, compel a finding of "hot pursuit." But the jury, as the trier of fact, expressly found the opposite: that no exigent circumstances (hot pursuit or otherwise) justified Swindell's warrantless entry into the home, even though the arrest was initiated from outside.

The jury, which was not instructed on the meaning of "initiated," simply believed the testimony from the Bailey family that Swindell was outside the house, while Bailey was already inside, when Swindell formed the intention to arrest Bailey and set it in

motion. As commonly understood, the word initiate applies logically to this version of events.[4] Although Bailey was inside the house, Swindell was outside when he started or initiated his charge toward Bailey. Far from inexplicable, the jury's factual finding that the arrest was initiated outside the home and that no exigent circumstances applied is consistent with the testimonies given at trial.

And as evidenced by the jury's verdict form, the jury found Bailey's version of events more credible than Swindell's testimony. Despite Swindell's testimony that Bailey struck Swindell outside the house prior to his arrest, the jury explicitly rejected such a finding when it concluded on the verdict form that neither "Battery on a law enforcement officer" nor "Knowingly and willfully resisting [a law enforcement officer]. . . by offering to violence or doing violence to the officer" supported probable cause. The jury chose to believe Bailey's testimony. We are not at liberty to second guess their decision.

Swindell argues that the jury's finding was legal, not factual, because the jury did not answer whether hot pursuit existed, but rather that exigency did not *justify* entry into the home. Swindell's argument is without merit. The district court instructed the jury that exigent circumstances would apply and "justify a law enforcement officer's warrantless entry into a home without an occupant's consent" if the person "flees [from arrest] into a home, and the

---

[4] "To begin, commence, enter upon; to introduce, set going, give rise to, originate, 'start' (a course of action, practice, etc.)" *Initiate, Oxford English Dictionary* (2d ed. 1989).

officer immediately follows the fleeing suspect into the home." At trial, Bailey testified that he was not running away from the scene and that Swindell had given no indication that he was under arrest until Bailey was inside the home. By answering "no" to the exigent circumstances question in the special interrogatories and by not checking the box for "[h]ot pursuit of a fleeing suspect into the home," the jury found that this circumstance did not exist. Simply put, the jury found that the arrest was initiated outside the house, but that there was no hot pursuit. There is no confusion that the jury answered a question of fact. Indeed, after the verdict, neither side claimed that the jury's findings were inconsistent, nor did they seek to return the matter to the jury before it was discharged.

Given the jury's binding factual findings, the correct question for the district court to ask in deciding whether qualified immunity applied was whether it was clearly established that an officer violates the Constitution when he "initiates" an arrest outside of a home and then enters the home without a warrant to complete the arrest in the absence of exigent circumstances. And the answer is yes.

"A right is clearly established when the state of the law gives the defendants fair warning that their alleged conduct is unconstitutional." *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1186 (11th Cir. 2020) (cleaned up). The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah v. Bond*, 595 U.S. 9, 11 (2021). The contours of the

rule must be so well-defined that it is obvious to a reasonable officer that his conduct was unconstitutional under the circumstances. *Id.*

Bailey's right to be free from a warrantless arrest in his parents' home absent exigent circumstances was clearly established. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." As the text suggests, "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). And the Constitution generally requires that officers obtain judicial warrants before entering a home without permission. *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). There are, however, exceptions to that warrant requirement. *Brigham City,* 547 U.S. at 403.

The relevant exception is for exigent circumstances. This exception applies when "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Mincey v. Arizona*, 437 U.S. 385, 394 (1978) (quoting *McDonald v. United States*, 335 U.S. 451, 456 (1948)); *see also Payton v. New York*, 445 U.S. 573, 590 (1980) ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.").

The Supreme Court has identified several exigencies that may justify a warrantless search of a home. *See Brigham City*, 547 U.S. at 403. For example, an officer "may 'enter a home without a

warrant to render emergency assistance to an injured occupant[,] to protect an occupant from imminent injury,' or to ensure his own safety." *Lange v. California*, 141 S.Ct. 2011, 2017 (2021) (alteration in original) (quoting *Brigham City*, 547 U.S. at 403). An officer may also make a warrantless entry to "prevent the imminent destruction of evidence." *Brigham City*, 547 U.S. at 403; *see also United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002) (noting that the exigent circumstances doctrine extends to situations involving "danger of flight or escape, loss or destruction of evidence, risk of harm to the public or the police, mobility of a vehicle, and hot pursuit"). In those circumstances, the delay required to obtain a warrant would bring about "some real immediate and serious consequences" and so the absence of a warrant is excused. *Welsh v. Wisconsin*, 466 U.S. 740, 751 (1984). But as this Court explained in the case's first appeal: "Unless a warrant is obtained or an exigency exists, 'any physical invasion of the structure of the home, by even a fraction of the inch, [is] too much.'" *Bailey I*, 940 F.3d at 1302 (alteration in the original) (quoting *Kyllo v. United States*, 533 U.S. 27, 37 (2001)). This rule is "not only firm but also bright." *Kyllo*, 533 U.S. at 40.

On the question of whether the Constitution forbids warrantless arrests absent exigent circumstances, the law speaks clearly. The line against such arrests "was drawn unambiguously in *Payton*, traces its roots in more ancient sources, and has been reaffirmed repeatedly since." *Bailey I*, 940 F.3d at 1303; *see also Kirk v. Louisiana*, 536 U.S. 635, 636 (2002); *Kyllo*, 533 U.S. at 40; *Welsh*, 466 U.S. at 754; *Johnson v. United States*, 333 U.S. 10, 15 (1948) (all reaffirming the

unconstitutionality of warrantless in-home arrests absent exigent circumstances). "As *Payton* makes plain, police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk*, 536 U.S. at 638. And "the Supreme Court has re-inked *Payton*'s firm line on numerous subsequent occasions." *McClish v. Nugent*, 483 F.3d 1231, 1242 (11th Cir. 2007). Because the law on this question is clearly established and gave Swindell fair warning that his treatment of Bailey was unconstitutional, Swindell was not entitled to qualified immunity and the district court erred in holding otherwise.

## IV.    CONCLUSION

For these reasons, we reverse the district court's grant of judgment as a matter of law for Swindell and reinstate the jury's verdict for Bailey.[5]

**REVERSED and REMANDED for reinstatement of jury verdict.**[6]

---

[5] Because we reverse the district court's judgment on these grounds, it is unnecessary to address Bailey's argument that the district court improperly heard Swindell's motion for judgment as a matter of law.

[6] Swindell also argues for a remittitur for damages in a footnote. Because a jury in *Bailey I* found that he did not use excessive force, Swindell argues that even if we reverse, the only damages available are the damages flowing from the unlawful entry alone, which would be de minimis nominal damages. Swindell is mistaken. Section 1983 defendants "are, as in common law tort suits, responsible for the natural and foreseeable consequences of their actions." *Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000). Swindell might not be liable for the excessive force claim, but he is liable for any and all reasonably foreseeable damages caused by his unlawful entry. As the district

## Appendix

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KENNETH BAILEY,

 Plaintiff,

v.        Case No. 3:15cv390/MCR/CJK

SHAWN T. SWINDELL,

 Defendant.

_____/

**VERDICT**

We, the Jury, in the above entitled and numbered case, return the following unanimous verdict by a preponderance of the evidence:

A. Did Deputy Shawn T. Swindell have reasonable suspicion to detain Mr. Kenneth Bailey for a law enforcement investigation?

 Yes  ✓  No

*Note: After answering this question, proceed to the next question.*

FILED IN OPEN COURT THIS
6-04-2021
CLERK, U.S. DISTRICT
COURT, NORTH DIST. FLA

Page 1 of 5

---

court instructed the jury before deliberations, "any force that Deputy Swindell used to effectuate the unlawful arrest was a violation of the Fourth Amendment." Injuries resulting from a physical arrest are certainly foreseeable consequences of an unlawful arrest in someone's home.

B.    Did Deputy Swindell have probable cause to arrest Mr. Bailey?

Yes __✓__    No    __

*Note: If you answered YES, proceed to the next question. If you answered NO, proceed to question C.*

    1.    Please indicate whether either or both of the following supports your finding of probable cause.

        _____    Willfully, maliciously, and repeatedly following, harassing, or cyberstalking another person

        ___✓___    Knowingly resisting, obstructing, or opposing a law enforcement officer who was engaged in the lawful execution of a legal duty

        _____    Knowingly and willfully resisting, obstructing, or opposing a law enforcement officer who was engaged in the lawful execution of a legal duty by offering to violence or doing violence to the officer

               Battery on a law enforcement officer

*Note:    After answering this question, proceed to the next question.*

2.    Where was the arrest *initiated*?

_____/    Outside the home

_____    Inside the home

*Note: If you answered "OUTSIDE THE HOME," proceed to the next question. If you answered "INSIDE THE HOME," proceed to question C.*

3.    If you determined that the arrest was *initiated outside* the home, did exigent circumstances justify Deputy Swindell's warrantless entry into the home?

Yes _____    No __✓___

*Note: If you answered YES, proceed to the next question. If you answered NO, proceed to question C.*

4.    Please identify which exigent circumstance(s) justified Deputy Swindell's warrantless entry into the home.

_____    Hot pursuit of a fleeing suspect into the home

_____    Urgent need to enter the home to prevent the imminent destruction of evidence

Page 3 of 5

_____ Specific and articulable facts supported a belief that the suspect was armed and immediate entry into the home was necessary for safety

*Note:    Once you have answered this question, your deliberations are complete, and the foreperson should sign and date the last page of this Verdict Form. You need not answer the remaining questions.*

C.    Did Deputy Shawn T. Swindell's conduct cause Kenneth Bailey's

injuries?



Yes _____        No _____

*Note:    If you answered "NO," your deliberations are complete, and the foreperson should sign and date the last page of this Verdict Form. You need not answer the remaining questions. If you answered "YES," proceed to the next question.*

D.    Do you find that Kenneth Bailey should be awarded compensatory

damages?



Yes _____        No _____

If you answered YES, in what amount?        $ 625,000.00

Page 4 of 5

*Note:* Once you have answered this question, you deliberations are complete, and the foreperson should sign and date the last page of this Verdict Form.

SO SAY WE ALL, this ___4th___ day of June, 2021.

Foreperson's Signature

Page 5 of 5